UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PAMELA GILBERT, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 4:12CV00754 AGF ) |
| THE GREATER ST. LOUIS AUTOMOTIVE ASSOCIATION INCORPORATED, | ) ) ) ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

Plaintiff Pamela Gilbert brings this action under the Employee Retirement Income Security Act ("ERISA") for additional amounts she claims are due to her as the spouse of her deceased husband, a former employee of Defendant, under a Deferred Compensation Agreement ("DCA"). Because the parties disagreed at the Rule 16 Conference whether discovery outside the administrative record should be available, the Case Management Order set a deadline for Plaintiff to request any discovery she believes she is entitled to, and the legal and factual basis therefor. The matter is now before the Court on Plaintiff's motion for a determination as to whether discovery will be permitted, an issue she contends is contingent upon the standard of review adopted by the Court.

## BACKGROUND

On September 5, 1990, the decedent and Defendant entered into a DCA that provided in relevant part that if he remained in the employ of Defendant until July 29, 1996, he would

receive annual deferred compensation payments in the amount of $36,000 for the remainder of his life, and upon his death, his spouse would receive such payments for her lifetime. The payments were to be reduced in any given year by the amount of distributions received by the decedent or his beneficiary during such year from any qualified retirement plan maintained by Defendant. (Doc. No. 1-1.) The DCA also provided as follows:

Determination of Benefits

> Except as otherwise specifically provided in this Agreement, [Defendant] shall make all determinations as to rights to benefits under this Agreement. Subject to and in compliance with the specific procedures contained in and the applicable regulations under the Employee Retirement Income Security Act of 1974, as amended: (i) any decision by [Defendant] denying a claim by Employee or Employee's beneficiary for benefits under this Agreement shall be stated in writing and delivered or mailed to Employee or such beneficiary; (ii) each such notice shall set forth the specific reasons for the denial, written to the best of the [Defendant's] ability in a manner that may be understood without legal or actuarial counsel; and (iii) [Defendant] shall afford a reasonable opportunity to Employee or such beneficiary for full and fair review of the decision denying such claim.

Administration

> Subject to the provisions of the Section hereof entitled "Determination of Benefits", the Board of Directors of [Defendant] shall have full power and right to delegate authority to interpret, construe and administer this agreement. The interpretation and construction of this Agreement by the Board of Directors of [Defendant], and any action taken thereunder, shall be binding and conclusive upon all parties in interest. No member of the Board of Directors of [Defendant] shall, in any event, be liable to any person for any action taken or omitted to be taken in connection with the interpretation, construction or administration of this Agreement, so long as such action or omission to act be made in good faith.

*Id*.

According to Plaintiff, in 1996 Defendant began paying the decedent $23,796 a year in

monthly installments. Upon his death on April 25, 2007, Defendant advised Plaintiff that she was entitled to monthly payments of $1,983. In 2010, Defendant told Plaintiff that it wished to "buy out" the payment obligation. She consulted with an attorney and was advised that the DCA provided for payments greater than she had been receiving, as she had never received any payments from a qualified pension plan maintained by Defendant. Upon inquiry, Defendant's counsel informed her that in 1996, when Defendant had maintained a qualified pension plan, the decedent received a lump sum payment under it in lieu of future monthly payments and that this was why her annual payments under the DCA were reduced and would remain at the then current level going forward.

Plaintiff believed she was entitled to more than she had been and would continue to be paid, and submitted her claim to Defendant's Board of Directors. The Board of Directors denied her claim, and her claim was denied again following an internal appeal. Plaintiff then filed this action for past and future benefits due her under the DCA.

The parties agree that the DCA is a "top hat plan" under ERISA. A "top hat plan" is one that is unfunded and is used by employers primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees. 29 U.S.C. §§ 1051(2), 1081(a)(3), & 1101(a)(1). In support of her motion now before the Court, Plaintiff asserts that *de novo* review of Defendant's benefit determination applies in this action, and that therefore discovery into matters outside the claim-process record–matters such as Defendant's possible bias or conflict of interest or procedural irregularities–is not appropriate. Plaintiff argues that the DCA does not give Defendant discretionary authority to

decide what benefits she should receive, because under the DCA, Defendant's Board of Directors is "required to apply the contract in an objective, nondiscretionary manner in accordance with the law." Plaintiff argues that if the Court were to apply an abuse of discretion standard of review, giving Defendant's benefits decision deference, she should be allowed to conduct discovery into the extra-record matters noted above.

Defendant acknowledges that under Eighth Circuit law, the standard of review in a top hat plan case is *de novo*, but asserts that where the plan confers discretionary authority on the plan administrator–as in the instant case–the Court's review is limited to a determination of whether the plan's decision was "reasonable," and that this
determination is identical to the abuse of discretion standard in a case involving a typical ERISA benefit plan that vests the plan administrator with discretion to interpret the plan. Defendant argues that, nevertheless, extra-record discovery is not allowed because Defendant owed no fiduciary duty to Plaintiff in interpreting the top hat plan. Defendant also notes that Plaintiff has failed to identify any specific information she might seek through discovery, and failed to establish good cause to permit discovery into the broad areas she mentioned.

## **DISCUSSION**

Here, despite Plaintiff's argument regarding discretionary authority, it is clear that the DCA gave Defendant, as the plan's administrator, discretion to interpret the agreement. In general, where an ERISA plan grants the administrator discretionary authority to determine eligibility for benefits, trust principles make an abuse of discretion standard of review appropriate. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Otherwise, a

benefits decision is reviewed *de novo*. *Hillstrom v. Kenefick*, 484 F.3d 519, 524 (8th Cir. 2007).

However, "'Top Hat' plans are unique animals under ERISA's provisions." *Fields v. Thompson Printing Co.*, 363 F.3d 259, 274 (3d Cir. 2004) (citation omitted). These plans are exempt from the participation, vesting, funding, and fiduciary provisions of ERISA. Accordingly, in *Craig v. Pillsbury Non-Qualified Pension Plan*, 458 F.3d 748 (8th Cir. 2006), the Eighth Circuit held that *de novo* review applies to benefits determinations under a top hat plan, even though the plan gives its administrator interpretive discretion. *Id*. at 752; *see also Goldstein v. Johnson & Johnson*, 251 F.3d 433, 441-44 (3d Cir. 2001).[1]

The Eighth Circuit explained that top hat plans are treated as "unilateral contracts" and are reviewed in accordance with ordinary contract principles. *Craig*, 458 F.3d at 752. Ordinary contract principles require that, where one party is granted discretion under the terms of the contract, that discretion must be exercised in good faith–a requirement that includes the duty to exercise the discretion reasonably; thus *de novo* review of a benefits determination under a top hat plan ultimately requires a determination of whether the plan's decision was reasonable. *Craig,* 458 F.3d at 752; *Goldstein*, 251 F.3d at 444 ("As with any other contract term, courts retain the authority to conduct a de novo review as to whether a party has complied with its good-faith obligations.").

---

[1] At least one other circuit has held that even top hat plans that grant the administrator discretionary interpretative authority are subject to an abuse of discretion standard. *See Comrie v. IPSCO, Inc.*, 636 F.3d 839, 842 (7th Cir. 2011) (applying *Firestone Tire* and rejecting *Goldstein'*s analysis).

*Craig* was decided before the United States Supreme Court decision in *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008). In *Glenn*, the Court held that an ERISA plan administrator's dual role of both evaluating and paying benefits claims creates a conflict of interest that should be weighed as a factor in determining whether there was an abuse of discretion, when that standard was appropriate. *Id*. at 112-14. After *Glenn*, the Eighth Circuit decided *Bender v. XCel Energy, Inc*., 507 F.3d 1161 (8th Cir. 2007), which reaffirmed that *Craig* applies to top hat plans that give the plan administrator discretionary authority to interpret the plan. *Id*. at 1167. The Eighth Circuit again noted that review was *de novo*, but that the review was "for reasonableness, a deferential standard." *Id*.[2]

In sum, the Court concludes that *de novo* review for reasonableness, as set forth in *Craig* and *Bender*, will be applied in the present case. The Court is not prepared to say that this precludes all extra-record discovery. It is conceivable that discovery may be appropriate to show that Defendant breached the implied covenant of good faith to exercise its discretion in a reasonable manner. Plaintiff would have to make a strong showing that particular discovery outside the administrative record was warranted. *See Ferrari v. Teachers Ins. & Annuity Ass'n*, 278 F.3d 801, 807 (8th Cir. 2002) (stating that even under de novo review, the introduction of documentation not in the administrative record is discouraged unless good cause is shown). Plaintiff has not yet made such a showing.

---

[2] The Seventh Circuit in *Comrie*, 636 F.3d at 842, described this an "an intermediate standard."

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for clarification regarding the scope of discovery is **GRANTED** to the extent set forth above.  (Doc. No. 14.)

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 30th day of November, 2012.